UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| BRIAN O'MALLEY | * | CIVIL ACTION NO. 17-4812 |
| --- | --- | --- |
| | * | |
| | * | SECTION: "H"(1) |
| VERSUS | * | |
| | * | JUDGE JANE TRICHE MILAZZO |
| PUBLIC BELT RAILROAD COMMISSION | * | |
| FOR THE CITY OF NEW ORLEANS | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Motion to Compel filed by plaintiff Bryan O'Malley. (Rec. Doc. 41). On January 24, 2018, the Court held oral argument and ruled on the majority of issues raised in the motion, but took under submission the issue of whether an unredacted copy of an Executive Summary created by the defendant would be required to be produced and required that an unredacted copy of the Executive Summary be produced to the Court for *in camera* review. For the following reasons, the Court finds the Executive Summary is not protected by the work product or attorney client privilege. Accordingly, as to the Executive Summary, the Motion to Compel is GRANTED. All issues raised by NOPB's Motion have now been resolved.

Background

This case arises out of an incident that occurred on March 19, 2017, at approximately 10:30 a.m. when O'Malley says he was struck by a locomotive. At the time of the incident, O'Malley was employed by the Public Belt Railroad Commission for the City of New Orleans ("NOPB") as a switchman/freight conductor. O'Malley alleges that on the day of the incident, there were two work crews, one working on the interchange lead (Job 100R) and one working on the switching lead (Job 102). O'Malley was working on the Job 100R crew, and says he was struck by the east facing Job 102 locomotive while he was performing his assigned duties. He complains that he did

1

not hear any bell, whistle, or other warning that Job 102 was moving. He says that the two crews should have been using the same radio channel so that he might have received notice that the Job 102 locomotive was moving. O'Malley alleges that he suffered severe and debilitating injuries to his lower back, ribs, and left side of the body as a result of the accident. He filed this lawsuit against NOPB on May 9, 2017, asserting claims under the Federal Employer's Liability Act, 45 U.S.C. 51 ("FELA").

Discovery Issue

Following the deposition of NOPB's Safety Director Carla Gendusa, O'Malley sought production of an "Executive Summary" that had been prepared by NOPB following the incident. According to the testimony of Gendusa, NOPB management conducted a meeting following the incident at issue in this lawsuit, and thereafter the Executive Summary was generated. At her deposition, Gendusa agreed that an Executive Summary is prepared following an executive meeting or meeting of managers about an incident, regardless of whether it's an injury or property damage. (Rec. Doc. 29-6). She agreed the preparation of executive summaries was a general procedure at NOPB and testified that she had reviewed the Executive Summary prior to her deposition.[1] Id.

In the declaration submitted by NOPB with its opposition memorandum, general counsel Erica Beck explained that she had created the executive summary form. (Rec. Doc. 34-3). She declared that the executive summary "was to be completed at [her] instruction and at [her] direction in the event of an incident to ensure that all facts were immediately documented in preparation for further proceedings, including potential litigation." It is completed by the department handling the

---

[1] O'Malley also argues that the Executive Summary must be produced because Gendusa reviewed it in preparation for her deposition. The parties failed to brief this issue sufficiently for the Court to address it. Because the Court finds the document is not privileged, it need not resolve this issue.

investigation of the incident. According to Beck, the executive summary is circulated to the safety and training manager for purposes of preparing Federal Railroad Administration ("FRA") reports and to the chief operating officer and chief executive officer "to make those individuals aware of an incident." It is also provided to Beck to put her "on notice of a potential lawsuit and so that [she] can assess legal liability." Beck declared that the Executive Summary at issue here was prepared after the management meeting at which she was present and the O'Malley incident (including potential for litigation) was discussed. However, she did not assert that the Executive Summary was prepared at her specific direction as a result of the management meeting discussion. At oral argument, too, NOPB's counsel could only vouch for the chronology involved—there was an accident; later there was an executive or manager's meeting; subsequent to that the Executive Summary was completed. Counsel could not, however, verify that the completion of the Executive Summary was ordered at the manager's meeting.

Law and Analysis

1. *Attorney-Client Privilege*

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." <u>Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.</u>, 768 F.2d 719, 720 (5th Cir. 1985). The purpose of the privilege:

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

<u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal

services, or assistance in some legal proceeding." United States v. Robinson, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original). Communications by the lawyer to the client are protected "if they would tend to disclose the client's confidential communications." Hodges, 768 F.2d at 720. "The burden of demonstrating the applicability of the privilege rests on the party who invokes it." Id.

Determining whether the primary purpose of a communication with an attorney was to provide or receive legal advice can be complicated when the communication involves in-house counsel because these attorneys may serve in multiple roles (including non-legal).[2] "[C]ommunications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged, nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel." Equal Employment Opportunity Comm'n v. BDO USA, L.L.P., No. 16-20314, 2017 WL 5494237, at *4 (5th Cir. Nov. 16, 2017). (citations and quotations omitted). Further, "a document that simply transmits a document to other individuals without more does not garner the protection of the attorney-client or work product privilege." Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc., No. CIV.A. 03-1496, 2004 WL 1299042, at *6 (E.D. La. June 4, 2004).

> The test for the application of the attorney-client privilege to communications with legal counsel in which a mixture of services are sought is whether counsel was participating in the communications primarily for the purpose of rendering legal advice or assistance. Therefore, merely because a legal issue can be identified that relates to on-going communications does not justify shielding them from discovery. The lawyer's role as a lawyer must be primary to her participation.

---

[2] "[B]ecause in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel." Stoffels v. SBC Commc'ns, Inc., 263 F.R.D. 406, 411 (W.D. Tex. 2009)).

In re Vioxx Prod. Liab. Litig., 501 F. Supp. 2d 789, 798 (E.D. La. 2007) (quoting Special Master's Report).

   2. *Work-Product Protection*

The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product protection extends to materials prepared by the party itself and representatives other than attorneys. The work product "privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)). "[M]aterials assembled in the ordinary course of business," are excluded from work-product materials. El Paso, 682 F.2d at 542.

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.

Piatkowski v. Abdon Callais Offshore, L.L.C., No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (footnotes omitted). "[T]he burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work product, falls on the party seeking to protect the documents from discovery." Id.

*3. Executive Summary*

To be protected by the attorney-client privilege, the primary purpose of the Executive Summary must have been to obtain legal advice. To be protected by the work-product doctrine, it must have been made in anticipation of litigation. The Court finds that neither is the case here.

Gendusa's testimony and the Beck declaration make clear that the Executive Summary is prepared in connection with any incident, without regard to whether that specific incident is at risk for litigation. As O'Malley points out, such investigative reports are often prepared by companies in the ordinary course of business, and they are not protected by the work product doctrine. E.g., Carroll v. Praxair, Inc., No. 2:05CV00307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006) ("If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in pre-trial discovery.") (quoting Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1119 (7th Cir. 1983)). The Executive Summary here is prepared for several purposes: to ensure facts were immediately documented, to put management on notice, to provide information so the FRA reports can be prepared, and to assist general counsel in assessing legal liability. It is clear that regardless of whether litigation is actually anticipated, the Executive Summary would have been prepared. Its primary purpose is neither the anticipation of litigation, nor is the primary purpose to obtain legal advice.

As noted, the Court has already ordered the Executive Summary produced with redactions of those portions that NOPB maintains are protected by the work-product doctrine or attorney-client privilege. The only portions that were redacted were the blanks for "primary cause" and "contributing cause." The court notes that the Executive Summary is not prepared by an attorney such that these sections might be interpreted as an attorney's assessment of the cause of the

incident. The primary purpose of the form is not to obtain legal advice or in anticipation of litigation. This remains true, even of the "cause" sections of the form.

Because the redactions improperly redacted material that is not protected by the attorney-client privilege or the work product doctrine, the full document, without redactions must be produced.

<u>Conclusion</u>

Accordingly, for the foregoing reasons, as to the Executive Summary, O'Malley's Motion to Compel is GRANTED. NOPB shall produce the unredacted form to O'Malley within seven days.

New Orleans, Louisiana, this 9th day of February, 2018.

                                                      Janis van Meerveld
                                              United States Magistrate Judge